ABRAM PRESCOTT *vs.* JEPTHAH WRIGHT & another.

The owner of a lot of land offered to sell all the wood standing thereon at a certain price by the acre, and either have the land measured, or call it seven acres, and gave the pur chaser a week to consider of it; at the end of which time the purchaser took it at seven acres, and paid the price, and received a bill of sale of all the wood on the lot. *Held,* that evidence that the purchaser, while the bill of sale was being drawn up, in reply to questions of the seller, said that he had not fully measured the lot, and thought there were little more than eight acres in it, when in fact, since the offer, he had ascertained by actual survey that it contained sixteen acres, was sufficient evidence to be submitted to a jury of such fraudulent misrepresentations as would authorize the seller to rescind the sale.

ACTION OF TORT for breaking and entering the plaintiff's close in Groton, and cutting and carrying away wood and timber. Answer, a license to enter, and a purchase of the wood and timber.

At the trial in the court of common pleas, the plaintiff's son and general agent, who had authority to make the sale in question, was called as a witness for the plaintiff, and testified that one of the defendants applied to him to purchase the wood standing on this close, and he told said defendant he would sell it, at the price of $90 per acre, except a small lot of young pines, which he must reserve; that said defendant asked him how many acres he thought there were, and he replied that he thought there were seven acres, and would sell it, without measurement, calling it seven acres; that said defendant said he was looking at another lot, and would look at this lot again, if the witness would give him the refusal of it for a week or more, which the witness then agreed to give him; that said defendant then again asked the witness if these were his best terms, and the witness replied they were—that the defendant could take it at seven acres, or have it measured, and take it at what it measured, at the rate of $90 an acre; that five days afterwards the defendants asked him what he would take for the young pines, and he replied $5; that the defendants then said they should want to make roads across this small lot, and fell trees upon it, and would therefore take it at $5, and the lot before spoken of " at the lump," calling it seven acres, and the defendants paid him $100 in cash, and gave him

39 *

their note for $535, and he signed and delivered to them a writing in these words: " Westford, Dec. 12, 1853. Rec'd of Jepthah Wright and George O. Wright six hundred and thirty five dollars in full for a lot of wood standing on the Canada lot, so called, and lying on the north side of the road leading to the paper mills in Groton, and south of land of Solomon Nutting, being all the wood that I own north of said road, and said wood and timber is to be removed from the land on or before the first day of April 1855;" that, while the papers were being drawn up, the witness asked one of the defendants if he had paced round the lot, and he replied that he had not, that he had paced across one end and part way across one side; that the witness asked how far it was across the end, and the defendant did not reply; that the witness then asked him how much, from what measurement he had made, he thought there was in the lot; and the defendant replied he did not know, but thought it would probably overrun eight acres a little, and there was over an acre of it without any wood on it; that the witness then said he thought the lot was cheap, and the defendant that he thought the price paid was all the lot was worth.

The witness also testified that as soon as his father knew of the bargain, he refused to ratify it, and the witness went twice to the defendants within four days after the sale, and tendered back the note and money, on the ground that his father would not ratify it; that four days after the bargain the witness heard that the defendants, after the first conversation, and before they gave him notice that they would take the lot at seven acres without measuring, had the land measured by a surveyor, and ascertained that it contained sixteen acres; that they did have it so measured, and knew, when they agreed to take it at seven acres in the lump, that it measured more than sixteen acres, as in fact it did; and that the witness, on the seventh day after the bargain, and before bringing this action, went to the defendants, and told them that he considered they had behaved unfairly in measuring the lot, and he considered his part of the contract null for that reason, and tendered back the note and money, which were refused. The witness also testified that he first went to rescind

the bargain, because his father did not sanction the bargain, and for no other reason; but that he did not then know that the defendants had measured the lot.

*Perkins*, J., for the purposes of the trial, ruled that upon this evidence the plaintiff could not maintain this action; a verdict was taken for the defendants; and the plaintiff excepted to this ruling.

*S. A. Brown*, for the plaintiff. The facts disclosed in the exceptions would warrant a jury in inferring fraud sufficient to authorize the plaintiff to annul the contract. The terms of the contract had been agreed upon between the parties upon the basis of seven acres without measurement; the defendants, by afterwards measuring it, precluded themselves from taking it "by the lump," without measurement; and their attempt to do so, withholding the fact that they had measured it, was a fraud upon the plaintiff. *Lewis* v. *Gamage*, 1 Pick. 347. *Waldron* v. *Stevens*, 12 Wend. 100. *Meade* v. *Webb*, 1 Bro. P. C. (2d ed.) 308. *Arnot* v. *Biscoe*, 1 Ves. Sen. 95. *Mellish* v. *Motteux*, Peake, 115. *Prentiss* v. *Russ*, 16 Maine, 30. *Hill* v. *Gray*, 1 Stark. R. 434. *George* v. *Johnson*, 6 Humph. 36. *Kidney* v. *Stoddard*, 7 Met. 252. *Pidcock* v. *Bishop*, 3 B. & C. 605.

*B. F. Butler*, for the defendants. The quantity of land in the plaintiff's own lot was a fact at least as much within the knowledge of the plaintiff or his agent, using due diligence, as of the defendant; the defendant was not therefore bound to disclose his knowledge of it; indeed, the time given him to examine the lot before concluding the bargain, could only have been to enable him to inform himself on this question; and a vendor is not allowed to rescind a contract of sale, unless in case of gross fraud. *Hobbs* v. *Parker*, 31 Maine, 148. *Cross* v. *Peters*, 1 Greenl. 376. *Barlow* v. *Wiley*, 3 A. K. Marsh. 457. *Rupart* v. *Dunn*, 1 Rich. 101. *Cochran* v. *Cummings*, 4 Dall. 250. Chit. Con. (8th Amer. ed.) 405. The agreement reduced to writing is for the sale of all the wood on the lot, and excludes all oral evidence of what the bargain was. *Davis* v. *Bradley*, 24 Verm. 55. *McGregor* v. *Bugbee*, 15 Verm. 734. The evidence does not show that more than seven acres of the sixteen were woodland.

BIGELOW, J.   The peremptory ruling of the judge, that the plaintiff, upon the evidence, was not entitled to maintain this action, was erroneous.   Cases like the present, involving the issue of fraud and deceit in procuring a contract, are eminently proper for the consideration of a jury, because, ordinarily, the main fact is not susceptible of positive proof, but is to be inferred from the acts and declarations of parties, and the various circumstances which attend upon and give character to the particular transaction which may be the subject of inquiry.   The fraudulent intent, which is essential to entitle a party to rescind a contract on the ground of fraud, is necessarily a matter of proof to be made out to the satisfaction of a jury, and cannot be properly determined by the court as a matter of law.   In the case at bar, the evidence tended to show something more than a mere suppression of facts which were known to the defendants, but of which the plaintiff and his agent were ignorant.   If nothing further had appeared, it would have been difficult for the plaintiff to have held his verdict, if he had obtained one, although even in that case it would have been proper to have submitted the cause to the jury.   *Laidlaw* v. *Organ,* 2 Wheat. 178.

But there was evidence in the present case which, if believed, had a strong tendency to prove that the defendants, at the time of the execution of the contract for the sale of the timber, made representations to the plaintiff's agent, concerning the quantity of land upon which the wood was standing, which were not only false, but were known by them to be false, and which might well have had a material influence on the mind of the plaintiff's agent, and have induced him to make the contract with the defendants.   Upon such a state of proof, it was the right of the plaintiff to go to the jury.   The contract having been seasonably rescinded by the plaintiff by a tender to the defendants of the note and money which they had given for the timber, he would have been entitled to a verdict, if he satisfied the jury that his agent had been induced to enter into the contract for the sale of the timber by the fraudulent misrepresentations of the defendants.                    *Exceptions sustained.*